Our final case this morning is Hawes v. Pacheco, number 19-8047. Counsel, you may proceed. Thank you. Good morning, Your Honors and Counsel. John R. Ceci from the Federal Defender's Office in Denver, appearing for Petitioner Gregory Hawes. Your Honors, it's a fundamental precept of federal constitutional law that the state must prove beyond a reasonable doubt every element of an offense, including those facts which establish the statutory punishment. Wyoming's kidnapping statute— Counsel, I follow where you're going, and I hate to interrupt, but the question I have is, are we not under the ADEPA or ADPUD standard? Is this a 22-55-54? I guess it is. It's a state. Aren't we under that proceedings and the holdings that we have to apply to this case? So, we are in 22-54, and obviously the ADEPA standards do apply, and they are deferential, but that deference is not absolute. And I think, to Your Honor's question, it goes to the heart of what I think is at issue still in this case, is the question of whether you have to defer to the Wyoming Supreme Court's description of safe release as a mitigating factor in its 1989 Loomer decision. And I think for at least three reasons, you should not, and indeed really cannot, simply defer to Loomer in this case. What authority? What's the authority you're going to give me that we're not obligated to follow that? First and foremost, Apprendi and the Supreme Court's statement that the question here is one of effect, not form. And just as the court, the New Jersey Supreme Court and Apprendi couldn't escape federal constitutional review by labeling something a sentencing factor, nor can the state escape review here by labeling it a mitigating factor. Both Apprendi and Aleem make pollucid that the Sixth Amendment inquiry is whether or not a fact is an element of an offense, and that that question is one of effect, not form. That effect is clear from A, just reading the words of the statute. Subsection D of 62201 literally says, and I think this is fairly fatal for the state's position, that if a defendant does not voluntarily release a victim substantially unharmed and in a safe place prior to trial, kidnapping is a felony punishable by 20 years to life. It sets out factual conditions that must exist for that statutory penalty to apply. But it's not just the words of the statute that we have here. It's also subsequent decisions of the Wyoming Supreme Court that affirmatively recognize that effect. So we have cases that we've said in our briefs like McDermott and Gould, where the state describes this provision as the enhancement portion of the statute, the aggravated, the fact that makes it an aggravated kidnapping. That is strong evidence that the state recognizes the actual effect, and that effect is what has constitutional significance. So to the extent that... Can I ask you a question about McDermott? I don't know that either of you pointed this out in your brief, but the way I read it, in that case, the State District Court actually instructed the jury that each of these elements, which include safe relief, must be proved beyond a reasonable doubt. And then on review, the Wyoming Supreme Court said, well, that language was an artful, but it was enough to have the jury know that McDermott had to fail essentially to meet the conditions, seemingly to put the burden back on McDermott. And yet, I don't think it was an artful. I think it specifically said the state has the burden of proof, and this is an element. So I wonder how we deal with that, which to me, I guess it's just an erroneous conclusion. It's more than an artful. Am I misreading what the state court instructed the jury? There's some tension, I think, that's evident in those decisions and in McDermott itself. I think my understanding of McDermott, I think, is that it was phrased in the negative so that the defendant did not do any of the following, and that the failure to not do any one of those would have essentially negated that aspect. So the phrasing, what they were saying was the phrasing in the negative did put the burden on him. I think that's where the artfulness turns, and so that it was trying to, I give them the credit, trying to sort of follow Loomer in that respect, but at the same time recognizing what the constitutional effect of that provision is. Yes, okay. The trial court did say each of these elements must be proved beyond a reasonable doubt, and it included safe release in that. So I just thought that's, it's pretty confusing, but it just added to the confusion for me, but yeah. I agree. I think the instruction doesn't move the ball forward one way or the other for us. I think that what we rely on is really the subsequent phrasing and recognition. Are you suggesting that it's kind of the structure here that's the problem? If this statute would have, if Wyoming had made this statute such that it would specify what the base offense is, and then as apparently a couple of other states have done, specified different punishments based on aggravating facts, would that be acceptable? I think it would raise different constitutional questions than are present here. I'm not going to sort of concede the acceptability of that, but it would be, it would be different questions than what we're presented with here. I think this, to your question though, I mean the structure is important, and in fact is what matters here, because it's radically similar actually to the federal drug statutes, right, which the court considers with frequency. That is 841A, right, defines it as a crime to unlawfully possess, distribute, etc., a controlled substance, full stop. Subsection B then provides a series of the quantity or type of controlled substance, so that if you possess 50 grams or more of methamphetamine, you're looking at 10 to, 10 to life, and if you don't, you know, maybe 5 to 40. We don't expect a criminal defendant to disprove that he possessed 50 grams or more, right, the state bears that burden under Mulaney, under Apprendi. The same is true here. This is exceedingly easy, right, as a matter of both procedure and proof in almost all cases for the state to just prove this facts in subsection D, and in most cases, these are objectively ascertainable facts. This isn't even questions of mens rea at issue in some, some situations. It's just what happens. In this case, it's the state, you're saying the state, what makes this a little bit of a twist is the state is, you're saying the state is obligated to prove an absence of facts, essentially the but if the statute still facts, I mean, it's still facts that they must prove an absence of facts, but most states in the federal government prove the absence of self-defense, there's nothing uniquely challenging about proving a negative and the statute could have just been worded in the positive, right, like if a victim is, you know, harmed, right, or, and on that, that, that, that those, those whims of legislative phrasing shouldn't turn, reframe the constitutional, fundamental constitutional protections, I think, so, and I do, the, the negative doesn't really make a difference where states and, and the federal government are used to proving the negative. Mr. Arcisi, framed in terms of AEDPA review, why doesn't the Supreme Court's decision in Patterson show that the Wyoming courts reasonably applied Supreme Court law in this case? Oh, for a couple of reasons, Your Honor. First, I think Patterson, particularly after Apprendi and Allene, I think Patterson doesn't really help us that much. You know, I think Apprendi recognized that, recognized that, that Patterson tried to reconcile Patterson, essentially, with, with Mullaney and the pre-existing cases, but it, it didn't find it to be controlling in any aspect. And again, reaffirmed, I think what's important about Apprendi and Allene, right, is that they reaffirmed what this inquiry is. Patterson itself, I think, sort of contains the seeds of its own limitations when it recognizes that there are constitutional limits to its own logic. And Apprendi and Allene, I think, sort of articulate what the Sixth Amendment limit is, that is, we look at the, whether a fact is an element of offense, of an offense, and we do so by looking at its effect. If the answer to that is the fact is an element, then the answer to the constitutionality, to the constitutional question is evident. We don't even get to Patterson. That being said, even if you look at Patterson on its own terms, I think the statute still fails, right, in the sense that this statute is not like the statute in Patterson, where murder was defined as here are two elements, and those lead to this penalty. And then it is also an affirmative defense that you did so with an extreme emotional, excuse me, extreme emotional defense, and that a new penalty applies. This statute is more like the statute in Mullaney, where the main criminal statute had an element, now as a forethought, listed in the statute that said, if now as a forethought, this penalty applies. Just as here, subsection D says, if no safe release, this penalty applies. And by presuming that that penalty applies, if the actus reus and mens rea of subsection A of the statute are met, the state is committing the exact same error that was evident at issue in Mullaney. And Patterson, so Patterson doesn't actually answer the question, I think, on its own terms, but I also don't think Patterson really applies, because we don't get to it. So, and again, well, would another way of understanding your argument be that based on your reading of the relevant Supreme Court case law, whether we are operating under edpedeference or not, doesn't really make a difference? I think that's true. I think we have a clear, established constitutional framework that really respondents haven't disputed, and that at best, Patterson represents a narrow exception or departure from that, and one that just isn't implicated here. I mean, there are ways to understand Patterson and sort of try to reconcile Patterson within this framework. You know, much of Patterson was concerned about the historical roots of extreme emotional, the extreme emotional defense within the heat of passion defense that existed at common law, so Patterson could be understood as limited in that capacity to a narrow category of affirmatively identified affirmative defenses that maybe exist. My problem with everything you're saying is that's one way to look at Patterson, but the district court here looked at it a different way, and I find it definitely in tension with Mulaney, and I think it's interesting that the Supreme Court didn't even mention it in Lean. It's kind of like we want to just forget about it, and yet it's out there. It's out there, and it's causing some issues here in terms of, you know, which case controls, and is that enough by itself to say that how is this if arguably Patterson applies? I think, you know, you've got a problem. Yeah, that's, I mean, certainly that's the only way I think really that this case doesn't come out for Mr. Hawes, right, is that if you, A, defer to the Wyoming Supreme Court's determination of this is a mitigating fact, which I don't think you should or need, which you should do, then B, the question becomes does that mitigating fact framework, is Patterson still that? And if you, my view is that A, Patterson, really we don't get to Patterson, but even if you do, I don't think this fits within that Patterson framework for the reasons that I just articulated with respect to this is Mulaney, not Patterson, right? This is malice of forethought and safe release versus, yeah, but I think, you know, I think it's significant too that, you know, again, that Lumer, I think, does overread Patterson in some degree in the sense that the affirmative defense framework articulated in Patterson is a very different statute, again, that effectively identifies an affirmative defense. And interestingly, Wyoming does have more Patterson-like statutes on the books and other codes. 63302 in a criminal entry statute is a Patterson statute in many ways. And I think that that sort of cuts against reading it in this way. I've got a minute left. I'd like to reserve that if I could. Thank you. Ms. Craig. Good morning. May it please the court, counsel. My name is Jenny Craig. I'm a deputy attorney general with the Wyoming attorney general's office. And I'm here today on behalf of Warden Pacheco and the Wyoming attorney general. And, you know, there's two things that the court has been hitting on a little bit with Mr. Arcisi's argument here today. But there are two things that are very important to keep in mind. Unlike every other case that you guys have heard this morning, this court is not sitting as an appellate court in this circumstance. This court is sitting as a habeas court. And therefore this court is limited to the review as applied in 28 USD 2254, which requires that this court simply review whether the state court's decision in Mr. Haas's case was contrary to or an unreasonable application of clearly established federal law. And that's a very high burden. That is not a that's not a standard where this court simply looks to see if the Wyoming Supreme Court's decision was simply incorrect. unreasonable application means that no reasonable jurists would have agreed with the Wyoming Supreme Court's decision in this case. But the second thing that that Mr. Haas cannot overcome is the fact that the federal courts are required to defer to the state's highest court on issues of state law I don't think that the statement from Apprendi is as broad as he wants to make it. The Wyoming Supreme Court's decision on on how to interpret and what that kidnapping statute means was an issue for the Wyoming Supreme Court to determine. This court can then look to that determination and that interpretation to determine whether that interpretation is an unreasonable application of established federal law. And Mr. Haas cannot do that. And the United States Supreme Court in this court has been consistent in its deference to state courts in these types of matters. And in fact, even in McDonald versus Champion, which is a habeas case from this court, this court stated that habeas courts do not determine whether state court interpretation of state law is correct. And so when we look to how the Wyoming Supreme Court has interpreted the kidnapping statute, the court has made clear that the elements of kidnapping are found in subsections A and B. A kidnapping is completed when a defendant unlawfully confines or removes the victim with the intent to do one of those enumerated items that are listed in the statute. At that point, I guess I want to interrupt you just because I guess I understand what you're saying about what Loomer said and what the Wyoming court has said. But as counsel pointed out in his opening argument, Apprendi says we don't have to accept the state court's description of of safe release as a mitigating circumstance. We have to look at what's actually happening with this statute and decide, do we have a problem under Apprendi? Do we have a problem under under Alene? And and why don't we have a problem? I mean this this actually, you know, this the difference between this particular fact is is determining both the low end and the high end of his range of punishment. Why don't we have a problem? We don't have a problem because putting the burden on the defendant to do that. The reason why we don't, excuse me, I'm sorry. Go ahead. The reason why there's not a problem is because the Wyoming Supreme Court has acknowledged that the deep penalty for kidnapping without having to prove any additional facts other than those found in subsections A and B constitute a sentence of 20 years to life. That is the problem is that the statute doesn't say that though. Putting aside what the Wyoming Supreme Court said, what does the statute say? And it doesn't indicate that there's some base base penalty here or you see what I'm saying? It it takes you right down to to you know C and D. It doesn't it doesn't it doesn't say that. I agree and your honor that's a problem. Well it's it's not necessarily a problem. It's a different interpretation of the statute than the way Wyoming Supreme Court has interpreted it. And while that could be a reasonable interpretation, the Wyoming Supreme Court's interpretation is also reasonable based on the language of the statute. The statute also doesn't say that the baseline is zero to 20 unless the state proves these other facts. And to the extent that the language of the statute may be ambiguous, that ambiguity was cured in Loomer when the Wyoming Supreme Court determined that the statute should be interpreted the way that they have said that it should be. And they relied on on Patterson. And you know to go even a little bit that one more step with what we're looking at in habeas review is Mr. Hawes needs to show that the Wyoming Supreme Court's decision in this that this violate apprendi or a lien is an unreasonable application of clearly established federal law or contrary to clearly established federal law. And he you know he relies on a lien and apprendi themselves as saying that it violates those but those cases don't say that at all. And in fact when we look at how other courts have applied statutes that have the same procedural mechanism mechanisms as the way Wyoming's is applied, every case that I found said that those those statutes are constitutional. And that I'm not understanding why I guess I'm confused as to why apprendi and a lien don't apply here and I'd like you to address that. This finding of this particular fact and the jury makes this finding it determines the penalty range. It absolutely determines his and the jury's making that finding and he's being the burden is being placed on him to disprove it. So I guess I'm not understanding why you just say a lien and apprendi don't apply here. Because apprendi applies to a situation where the statutory maximum as designated by the legislature for that core crime is increased because of the factual existence of another crime. And apprendi said that a jury has to make those factual determinations beyond a reasonable doubt. That is not the case that we have here. The way that the kidnapping statute operates is that once those facts those elements in subsections a or one and two are or a and b are proven beyond a reasonable doubt the sentence that the court can impose is 20 years to life. That is the sentence the court must impose. Only after the state has proven those elements beyond a reasonable doubt does the defendant then have the opportunity to come in and prove that he was that he voluntarily released the victim. So you're you're you're relying I mean you're relying on your interpret on the Wyoming Supreme Court's interpretation of the statute there. If correct again if we don't accept that that's a reasonable interpretation then I guess that's where I'm getting confused. If we don't accept that interpretation then your argument falls out about Aline and apprendi now applying. Well and and to be quite honest with you um Hawza's trial didn't take place um under the the statute operating in any other way and so I I can't argue that his his trial would have taken place consistent with an interpretation of the statute in any other way other than the way the but this court should not should not just completely throw away what the Wyoming Supreme Court has interpreted. It relied on Patterson um 1989 was long before Apprendi and Aline were published and the court did rely on Patterson and it fits squarely within what the United States Supreme Court said was permissible in Patterson. The the state is that uh Loomer was decided before uh Apprendi and Aline but now we have Apprendi and Aline um why doesn't that uh change things? Because your honor we still have Patterson um and as Judge Moritz pointed out that perhaps we have some tension between these cases and I think that Well okay uh let me come back to the point you started with which is that we're a habeas court not not a uh we're not doing this on a direct appeal but let's suppose that we didn't have the AEDPA standard. Would you still be making the same argument? Would you still prevail on these arguments if we didn't have AEDPA or or or is your position driven by AEDPA deference? I think that if we we set aside AEDPA and we set aside the this entire idea of federalism that we have between the federal courts and the state courts. I just want to set aside AEDPA let's do that. No I think that the statute would still be permissible because the Wyoming Supreme Court has interpreted that statute um in a way that is constitutionally permissible under Patterson and the fact that Apprendi and Aline now exist I'm not saying that they don't have some sort of effect on on the analysis here but those those cases the the holdings of those cases which again and I guess this goes back a little bit to what we're looking at with AEDPA but if we look at what the actual holdings of those cases are they just aren't applicable with the Wyoming Supreme Court's interpretation. Well that that's fine but but you started out this argument as if AEDPA was the reason we had to accept your position and now it sounds like AEDPA doesn't really even matter. Well even though I could argue that the that the statute is still constitutional even if we're not looking at it through AEDPA review um the fact of the matter is is that we are looking at this through an AEDPA lens and that certainly affects how this case should be decided because Mr. Haas has to show that no reasonable jurist would agree with the way the Wyoming Supreme Court came out on this and you simply can't do that and in fact as I meant that and is that because of Patterson? Well many of the the courts that have looked at this issue they're looking at these these kidnapping statutes and they recognize that these statutes are constitutionally permissible under Patterson but then they go on to say and now we have a lien and we have a Prendy but those cases just they don't have any effect on these types of statutes because the the courts aren't going above and beyond what the legislature what case what case have you cited in your brief that comes closest to the Wyoming situation and a court has up uh upheld the constitutionality? Well uh the first one I'd like to point out is uh State versus Becerra and and I and I will point out that I could not really find any um authority that had been up to the circuit courts yet and so we're looking at state courts and at best federal district courts at this point in time but in State versus Becerra the the Nebraska kidnapping statute is interpreted the same as the way the procedure works in Wyoming. The Nebraska Supreme Court determined that that was in line with Patterson and it didn't violate a Prendy and the federal district court on habeas review um the court actually I think dealt with this issue more on the fact that a Prendy shouldn't be retroactively applied on collateral review but it did do a discussion of the Nebraska Supreme Court's discussion of Patterson and a Prendy and how these all apply and was very positive about the way the court applied that. I'd also like to point the court to um a case called Schultz versus Terry which came out of the federal district court in West Virginia and West Virginia's same there's the elements of kidnapping which deal with the confinement the removal and the intent for doing so and that the the penalty for that is life but then there are four exceptions to that um and two of those involve the defendant having to show certain facts that deal with how he treated the victim after the kidnapping occurred which is the same as Wyoming and the magistrate did a report and recommendation that did an excellent discussion of and talked about how this is a peculiar statute it is strange but we have to defer to uh the West Virginia Supreme Court's interpretation of that statute even though it could have been interpreted a different way and the court did an analysis of a Prendy and a lien and determined that those just didn't apply because the statutory maximum for the core crime as stated by the legislature was life and all that what the defendant was having to prove in that case was bringing that statutory minimum and maximum down and that is not what was at issue in a lien and a Prendy so those cases are supportive of the Wyoming just the Wyoming Supreme Court's decision and how it handled this case and Haas's Haas's trial was was handled 100 percent down the line in in accordance with Lumer um the the jury was instructed of what the elements of kidnapping were as found in a and b they were instructed that Haas had the burden to show those mitigating circumstances and um and the special verdict form had the jury make that factual determination oh i've got one quick question for you if we and i'm not saying this is where i'm coming down but if we were to agree uh in connection with the arguments straight here raised here what is your idea of the you know it does he get released immediately if you were to determine that this the statute was unconstitutional as applied no i would i would submit that it should be a conditional writ um the and that the state court would the state would have the opportunity to retry him under the um under the unconstitutional statute well i think that it's important to recognize that i don't think the statute itself is unconstitutional i think if you interpreting if we found that if we found that how how would that work on remand well i don't know that you could find the statute unconstitutional in every interpretation i think that it can be interpreted if you were to determine that the way that it is currently being interpreted is unconstitutional then you look at it the other way that everybody has been suggesting that maybe it could be interpreted which is that those are elements and so the state should just have to go back and on retrial be able to show and have to show beyond a reasonable doubt those elements because we look at what happened in the district court i don't think there's an issue of proof um because the jury already made a determination that he didn't he's trying to ask a question sorry this is a question about burden of proof and if if we were determined that the burden was improperly put up on the claimant here you're saying you'd still get to go back and retry him is that your position well i think that we have sort of a unique situation here in that this question was put to the jury so it's not like the state just failed to improperly if we go that way the burden of proof was changed from where the government had to prove something beyond a doubt and that the defendant had to buy only a preponderance of the evidence and that's the whole crux of this case the burden of proof in regards to that isn't that right you're right the burden of proof is the that's where the buck stops with this i praise that because it wasn't addressed in your in your brief and yes your honor and and part of that reason was because that issue also was not addressed with the district court the district court did not ever make a determination on that the district court found so i think that that would be a question that more would appropriately go back to the district court uh would you have determined waived that argument then i mean because presumably you have to assume at this stage that we might disagree with the district court and we might grant the habeas and shouldn't you have had to um it it wasn't a question that was included in the certificate but it's it's clearly and i don't know how it cannot be a question when that's the whole point is should he be granted habeas relief what the relief should be would be obviously implicit and should have been perhaps addressed in your brief yes and i apologize um to the extent that i for your apology i'm just wondering what you think about whether you may have waived that any argument about what i don't believe i i don't believe that i've waived it because it's never been actually squarely addressed by the district court and i think that if you were to determine that the district court should have looked at this under a different lens it would be remanded back and at that time we would discuss what the remedy should be and thank you thank you okay any any other questions for miss correct no not correct all right mr rcc uh we're going to give you a little extra time because we went over on the remedy uh issue so um you it maybe for starters you might want to address that because we were just talking about it for your honor i only have uh really two two points to make anyways um you know i think on the remedy my response is that respondents didn't dispute the remedy that we advocated for in our opening brief and that you can literally just leave it at that that that claim has that we are asking for habeas relief we described what habeas relief looked like and respondents didn't dispute that if mr haas was entitled to relief because of success in the merits that this would follow um and we can just leave it at that um i'm not through with leaving it i've got one more question of you and that's in regards to apprendi and elaine those are not burden shifting cases are they the apprendi case is clearly as was described by opposing counsel for you as to what it was about this case is about burden shifting uh so that's actually goes directly to my second point your which is that uh apprendi and elaine obviously deal with uh enhancement provisions right but they rely on the premise of winship and mulaney that uh that before you get to an enhancement provision the state has already proven those facts that establish the underlying penalty beyond a reasonable doubt and so whether it's framed in terms of burden shifting or in terms of simply establishing the benefit the the the facts necessary to to to punish someone within a range of statutory punishment uh elaine and apprendi necessarily depend on that foundational premise that that mulaney and winship and back to time memorial really articulate and that's what we ultimately rely on and in not applying apprendi and elaine after um you know not below uh applied the wrong law essentially and that is is contrary to an unreasonable application of federal law and if the court has no further questions oh i've got one more question in regards that i raised that issue because of the habeas standard that we have and this is a burden shifting uh requirement and the application of edpa or dpa however you want it so that's i because i'm that's where i'm having trouble with mainly in the standard that's to be applied and how it's to be applied and what constitutes its application in your case so uh just my only comment council well i that i take that and i think that um you know we're applying principles of federal constitutional law here right and clearly established rule that we've articulated in terms of the beyond the reasonable doubt standard really fundamental foundational principles um and by shifting the burden okay go ahead you may be getting ready to answer exactly what i'm thinking so by shifting the burden to the defendant under this statute the state violates those fundamental principles and so the two are in are are independent but intertwined in this case right mr rcc uh how do you respond to miss craig's point and she made it uh more than once that uh as a federal court we are bound by uh the highest court of a state's interpretation of its own statute why why doesn't that uh why isn't that uh determinative here i think two reasons your honor i mean one just as a fundamental like how we read statutes there's a point at which you can't uh just ignore the words right and subsection d literally says what it says but second and more important into the law well but but council uh i understand about not ignoring the words but if if the if the state supreme court interprets a state statute can a federal court really question that absolutely and i'm sorry why why would why would that be well here it's because of apprendi and aline right because they tell and that's my second point is that apprendi and aline tell us how to read that statute as a matter of applying federal constitutional principles and you do not have to on essentially on the burden of proof or of on the beyond the reasonable doubt standard that's true if it's not the u.s supreme court that that uh that the lower federal courts can second guess state supreme court's interpretation of their own statutes you yes and as sitting as a fed as a habeas court of course you're applying the federal constitutional law that apprendi and aline make clear following millennia and apprendi and to do so you necessarily have to read that statute and if if if the wyoming supreme court's failure to revisit that statute and loomers interpretation after apprendi and aline leads to it that old interpretation staying then yes absolutely you have to to apply that current law to the reading and again follow what the supreme court aline said was the essential sixth amendment inquiry which is whether it's an element it is here and mr has entitled to relief if the court is i'm happy to have a little bit one more and this will be real quick i i i wondered i think you mentioned in your brief or you responded in your reply brief to the uh council's citation to the nebraska and west virginia statutes that she said are are the same essentially structured the same i think you responded that in your reply reply brief and if you did that's fine but if you didn't do you have a reply yeah i mean my reply is this that the analogy fails because the statutes aren't analogous um that is that it depends on deferring to those that analogy depends on deferring to loomer and if you read those nebraska nebraska and becerra and the west virginian schultz statutes they are not the statute at issue here and that our position is that it just they're just simply not part of the equation wyoming has by its own admission in the doctor case that we cited in the briefs a unique kidnapping statute we're concerned with whether that statute right as applied to mr haas in this case violated the constitution it did i was just trying to see if there was any case law you know that would help us and and then that's why i questioned it thank you thank you mr rcc thanks to both of you uh you both covered a lot of ground um be helpful to the panel uh in deciding this appeal so we appreciate that the case will be submitted uh council are excused